UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. SWIDORSKI, JR.,

    Plaintiff,

v.                                                       Case No. 1:11-cv-198
                                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on January 23, 1976 (AR 127).[1] Plaintiff alleged a disability onset date of June 3, 2004 (AR 127). However, plaintiff did not file applications for DIB and SSI until October 2007 (AR 102-12, 127). He completed the 11th grade (AR 138), and has previous employment as a dishwasher, gas station attendant, laborer, line worker, paper boy, ride operator at a carnival, and stocker at a retail store (AR 133, 166-68). Plaintiff identified his disabling conditions as "bipolar & other mental problems" (AR 132). As a result of these conditions, plaintiff avoids people, is depressed a lot and "can barely get up" (AR 132). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 22, 2009 (AR 12-22). This

---

[1] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 3, 2004 and met the insured status requirements for DIB through September 30, 2004 (AR 15). Second, the ALJ found that plaintiff had severe impairments of bipolar disorder, personality disorder, and substance abuse disorder (AR 15). At the third step, the ALJ found that plaintiff had an impairment or combination of impairments that met or equaled the requirements of the Listings 12.04 (affective disorders), 12.08 (personality disorder) and 12.09 (substance abuse) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).

After making these findings at the second and third steps of the evaluation, the ALJ determined that plaintiff's substance abuse was a contributing factor to his alleged disability pursuant to 20 C.F.R. §§ 404.1535 and 416.935. The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). *See Siemon v. Commissioner of Social Security*, 72 Fed. Appx. 421, 422 (6th Cir. 2003) ("the social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material for a finding of disability"). The regulations provide that if the Commissioner finds that a claimant is disabled and has medical evidence of drug addiction or alcoholism, the regulations

require the Commissioner to "determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). In making this determination, the regulations provide as follows:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> >
> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).

In applying 20 C.F.R. §§ 404.1535 and 416.935, the ALJ made the following findings. With respect to the second step of the evaluation, the ALJ found that plaintiff would still have severe impairments absent the substance use (i.e., "[i]f the claimant stopped substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic mental work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments") (AR 17). However, with respect to the third step of the evaluation, the ALJ found that if plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listing in 20 C.F.R. Pt. 404, Subpt P, App. 1 (AR 17).

The ALJ decided at the fourth step that:

If the claimant stopped substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be limited to unskilled work in that he is unable to understand, recall and carry out detailed or complex instructions; and he cannot perform jobs that involve contact with the general public, more than infrequent interaction with others, or team/line coordination.

(AR 17-18). The ALJ also found that even if plaintiff stopped substance use, he would be unable to perform past relevant work (AR 21).

At the fifth step, the ALJ determined that if plaintiff stopped substance use, there would be a significant number of unskilled jobs in the national economy that he could perform (AR 21-22). Specifically, plaintiff could perform 54,000 jobs in the regional economy such as dishwasher (12,000 jobs), assembler (20,000 jobs), and machine tender (22,000 jobs) (AR 21-22).

The ALJ summarized his decision as follows:

Because the claimant would not be disabled if he stopped substance use (20 CFR 404.1520(g) and 416.920(g)), the claimant's substance use disorders [sic] is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(AR 22).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating physicians.**

### A. The opinions of plaintiff's two treating physicians

Plaintiff relies on the opinions offered by his primary care (treating) physicians, Raymond Schmoke, M.D., and Russell Williams, D.O., to demonstrate that he is disabled. Dr. Schmoke completed a "Medical assessment of ability to do work-related activities (mental)" on June 27, 2008, supplemented with a letter regarding plaintiff's ability to perform work dated July 21, 2008. Plaintiff's Brief at p. 2. Dr. Williams also completed a "Medical assessment of ability to do work-related activities (mental)" completed on October 15, 2008. *Id.* at pp. 2-3.[2]

Dr. Schmoke noted that plaintiff "is physically normal" (AR 354). However, the doctor found that plaintiff has mental impairments which result in either a poor ability or no ability to function in the workplace (e.g., he has no ability to follow work rules, relate to co-workers, deal with the public, use judgment, deal with work stresses, understand detailed or complex job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability) (AR 351-53). In his July 21, 2008 letter, , Dr. Schmoke states that plaintiff cannot perform even the job of a 14-year-old paperboy, explaining that plaintiff "just decided not to show up for several weeks" at the job and then was "[s]urprised when they did not bring him back to work" (AR 354). Plaintiff refuses to bathe or shave and is quick to anger (AR 355). Dr. Schmoke stated that plaintiff had been in prison for writing bad checks, "but when free, had no problem going to bank and obtaining a checking account with absolutely no money and then went around town writing bad checks to various restaurants" (AR 355). Plaintiff has been frequently arrested and has, at times, caused his mother and sister to "flee"

---

[2] While plaintiff refers to the forms completed by Drs. Schmoke and Williams as a Psychiatric Review Technique Forms (or PRTFs), these forms are not the PRTFs used by the SSA in evaluating mental functioning. Rather, the forms completed by Drs. Schmoke and Williams resemble the Mental Residual Functional Capacity (RFC) Assessment forms used by the SSA.

the house when he becomes agitated or drinks (AR 355). Plaintiff also exercised "poor judgment" by taking a month's supply of medication "to see if he could get a good night's sleep" (AR 356).

In his October 15, 2008 assessment, Dr. Williams expressed a somewhat different opinion of plaintiff's condition. Dr. Williams uniformly rated all of plaintiff's abilities as "poor to none" (AR 358-59). However, Dr. Williams felt that plaintiff's behavior was caused, in part, by substance abuse and the failure to take his medication. In describing the medical and clinical findings that supported plaintiff's limitations, Dr. Williams noted that plaintiff had a history of bipolar disorder with alcohol dependence and polysubstance abuse, along with a "history of poor compliance with medication," no substantial work history, poor judgment and insight, and anti-social traits (AR 359). Dr. Williams also pointed out plaintiff's admission that "he is drinking about a fifth of rum a day along w/ marijuana abuse" (AR 359).

> **B.   The ALJ's opinion**
>
> **1.   The weight accorded to the opinions of treating physicians**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is

not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

## 2. The ALJ's evaluation of the medical evidence

In reviewing plaintiff's medical records, the ALJ noted that plaintiff was doing "excellent" in April 2005 when he was taking his medication (Depakote) (AR 19, 289). Plaintiff's condition degenerated later that year when he returned to daily drinking and mixing alcohol and marijuana with Depakote (AR 19, 408-09, 432). From later 2005 through 2008, plaintiff engaged in intermittent substance abuse and incarceration for alcohol related infractions (AR 19, 298, 302, 304, 379-80, 423-24, 433). In October 2007, plaintiff had a severe "alcoholic outbreak" which was severe enough to have his mother and sister flee the residence and for his mother to report to authorities that plaintiff was trading his food stamps for drugs and alcohol (AR 19, 319). Plaintiff underwent a consultative psychological evaluation in January 2008, at which time he claimed to be alcohol-free for a "couple of months" (AR 19, 323). Plaintiff's mental status was within normal limits and the examiner, Edward G. Tava, Ed. D., reported that plaintiff was manifesting traits of

Bipolar II disorder and a personality disorder with anti-social traits (AR 19, 322-26). Dr. Tava also noted that plaintiff's "abuse of alcohol has apparently been a major contributor of his manic episodes" (AR 325).

In October 2008, Dr. Williams reported that plaintiff was using marijuana several times a week and drinking up to a fifth of rum a day for several months (AR 19, 359, 402-03). Plaintiff's behavior involving substance abuse continued until the winter of 2009, when, after having been sober for two months from alcohol and three weeks from marijuana, plaintiff admitted that alcohol was "90% of my trouble" (AR 19, 397). The ALJ found it noteworthy that when plaintiff was working full-time in July 2009, he had decreased his alcohol intake "dramatically" (AR 20, 389-91). Given this background, the ALJ addressed Dr. Schmoke's and Dr. Williams' opinions as follows:

> As for the opinion evidence, Drs. Schmoke and Williams completed functional assessments that clearly describe capacities that are inapposite [sic] those above. However, Dr. Schmoke conceded that the claimant's compliance with treatment had been intermittent at best (5F/3) and Dr. Williams indicated that the claimant was drinking a fifth of rum and smoking marijuana daily (l4F). The undersigned infers that without these stressors, the claimant likely would be able to control his impulses and moods adequately such that he could relate, follow supervisory direction, and keep a reliable schedule in limited, unskilled settings devoid of public contact. The claimant himself acknowledged that he had lost employment due to his drinking problem (l7F/41). He also conceded that he has had trouble finding work for non-disability related reasons, i.e., his prison record (17F/9). Although the undersigned is empathetic concerning the barrier that this condition poses, it cannot be considered in the instant evaluation of maximum capacity for work-related functioning.
>
> Accordingly, after careful consideration of the objective medical findings, the subjective allegations, the medical opinions, and all other relevant evidence, the undersigned finds that, absent substance abuse, the limitations assessed herein are warranted, but that no further restriction is justified.

(AR 20-21).

Based on this record, plaintiff's claim that the ALJ failed to give appropriate weight to the opinions expressed by Drs. Schmoke and Williams is without merit. Contrary to plaintiff's claim, the ALJ acknowledged that plaintiff suffered from the conditions identified by Drs. Schmoke and WIlliams, as evidenced by the ALJ's initial finding that plaintiff was disabled under Listing 12.04, 12.08 and 12.09 (AR 15). However, the ALJ denied plaintiff's application for DIB and SSI because plaintiff's substance use disorder was a contributing factor material to the determination of disability and because plaintiff would not be disabled if he stopped the substance use (AR 22). *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535 and 416.935; *Siemon*, 72 Fed. Appx. at 422. Substantial evidence supports the ALJ's finding that plaintiff's substance abuse was a contributing factor material to the determination of disability, that absent the substance abuse plaintiff would be have only those restrictions as listed in the RFC, and that plaintiff's RFC enabled him to perform 54,000 jobs in the regional economy (AR 17-18, 20-22). Accordingly, plaintiff was not disabled within the meaning of the Social Security Act.

### IV. CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.

Dated: March 26, 2012            /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge